**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
LUCIANO F. PAONE,                                    **MEMORANDUM OF
                                                                        DECISIONAND ORDER**
                  Plaintiff,                    No. 07-CV-2973 (ADS)
       V.

MICROSOFT CORPORATION,

                  Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Desmarais LLP**
*Attorneys for the Plaintiff*
230 Park Avenue
New York, NY 10169
   By: Andrew Gordon Heinz, Esq., of Counsel

**Kirkland & Ellis LLP**
*Attorneys for the Plaintiff*
153 East 53rd Street
New York, NY 10022
   By: Jeanne M. Heffernan, Esq.
      Benjamin Adam Lasky, Esq.
      Jonathan Ross Carter, Esq.
      Kenneth R. Adamo, Esq.
      Gianni L. Cutri, Esq. of Counsel

**Woodcock and Washburn LLP**
*Attorneys for the Defendant*
2929 Arch Street, 12th Floor
Philadelphia, PA 19104-2891
   By: Dale M. Heist, Esq.
      Daniel J. Goettle, Esq.
      John E. McGlynn, Esq.
      John F. Murphy, Esq.
      Steven J. Rocci, Esq., of Counsel

**Westerman, Ball, Ederer, Miller & Sharfstein, LLP**
*Attorneys for the Defendant*
1201 RXR Plaza
Uniondale, NY 11556
   By: Greg S. Zucker, Esq.
      Jeffrey A. Miller, Esq., of Counsel

**SPATT, District Judge.**

In this patent infringement case, the Plaintiff Luciano F. Paone (the "Plaintiff" or "Paone") alleges that the Defendant Microsoft Corporation ("Microsoft") has infringed United States Patent 6,259,789 (the "#789 Patent"), which Paone holds. Presently before the Court is a motion by Microsoft for an order pursuant to Local Rule 6.3 for reconsideration of this Court's rulings on Plaintiff's Motions in *Limine* Nos. 4 and 5, and Defendant's Motion in *Limine* No. 4.

## I. BACKGROUND

### A. <u>Background of the Invention</u>

On July 10, 2001, the United States Patent and Trademark Office ("PTO") to Paone the #789 Patent, entitled "Computer Implemented Secret Object Key Block Cipher Encryption and Digital Signature Device and Method," to Paone. The #789 Patent describes a method of translating (or "encrypting") ordinary data (called "plaintext") into encoded data (called "ciphertext"), so that the plaintext may not be viewed by an unintended reader. In cryptography, which is the science of encryption, such a method is called a "cipher." Generally, encrypted ciphertext is later decoded, or "decrypted," into plaintext, so that the data is again usable.

There are several ways to encrypt computer data, but the #789 Patent deals exclusively with "symmetric key" encryption of computer data, which requires that the encryptor and decryptor share knowledge of both a cipher and a key. Computer based symmetric key ciphers divide roughly into two types: block ciphers and stream ciphers. As a general matter, a stream cipher employs its key to encrypt data one bit at a time,

while a block cipher employs its key to encrypt bits in groups. The #789 Patent describes a block cipher.

Computer implemented block ciphers have been in wide use in the United States since at least 1976, when a block cipher called the "Data Encryption Standard" or "DES" was adopted by the United States government for general use. As of 1997, when Paone filed his patent application, dozens of additional block encryption algorithms had been published. However, most of those inventions used a single key to encrypt successive blocks of data. Paone's innovation – in the most general terms – was to change the encryption key for each data block, based on additional, randomly generated data.

B. **Procedural History**

On December 12, 1997, Paone filed his application for the #789 Patent. Following the initial application, the PTO rejected Paone's claims as unpatentable in three successive office actions, dated September 29, 1999, March 16, 2000, and October 30, 2000. In response to each of these rejections, Paone modified his claims and provided additional argument. Then, on July 10, 2001, the PTO deemed the described invention patentable, and issued the #789 Patent.

On July 23, 2007, Paone commenced the present action against Microsoft, alleging that Microsoft was infringing the #789 Patent. Specifically, Paone asserts that two components of Microsoft's flagship computer operating system, Windows, infringe the #789 Patent.

The parties proceeded with discovery, during which time Microsoft requested that the PTO reexamine the #789 Patent. In early 2009, with the reexamination proceeding still pending, the parties briefed claim construction motions. However, before holding a

Markman hearing, on April 5, 2009, the Court stayed the case pending the resolution of the reexamination proceeding. Then, before the stay was lifted, Microsoft filed two more reexamination requests, dated June 29, 2009, and July 17, 2009. The three reexamination proceedings as a whole resulted in the cancellation of claims 1, 3, 23, and 32 of the #789 Patent, but also a ruling that several claims, including claims 2, 24, 33, and 34, were patentable. After certain amendments, a number of other claims were also found to be patentable.

After the reexamination proceedings had been finalized, on March 3, 2010, the Court lifted its stay. Partly as a result of the reexamination proceedings, Paone modified his position to assert that Microsoft was infringing claims 2, 24, 33, and 34 of the #789 Patent, all of which had been ruled patentable by the PTO.

It is crucial to note that claims 2 and 33 in the '789 Patent are method claims. See In re Kollar, 286 F.3d 1326, 1332 (Fed. Cir. 2002) ("the distinction between a claim to a product, device, or apparatus, all of which are tangible items, and a claim to a process, which consists of a series of acts or steps."); see also NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1322 (Fed. Cir. 2005) ("The invention recited in a method claim is the performance of the recited steps."). In the Federal Circuit, it is "axiomatic that a method claim is directly infringed only if each step of the claimed method is performed." Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318, 1328 (Fed. Cir. 2008).

Paone alleges that both of the method claims are infringed by both TKIP and BitLocker. On the other hand, 24 and 34 are system claims, and not method claims. Paone asserts that both of these claims are infringed, but only by TKIP and not by BitLocker.

4

Upon the lifting of the stay, the parties resumed their claim construction motions. Then, on the consent of the parties, on April 23, 2010, the Court appointed Gale R. Peterson, Esq., an experienced and well-regarded patent attorney, as a special master for the limited purpose of conducting a Markman hearing and issuing a report and recommendation to the Court on claim construction.

Prior to the Markman hearing, the parties presented nine claim terms for construction. However, after meeting and conferring at the suggestion of the Special Master, the parties agreed on meanings for three of those terms.

On June 23, 2010, Special Master Peterson conducted a non-evidentiary Markman hearing, at which the parties' attorneys presented their arguments on claim construction. On August 11, 2010, Special Master Peterson issued an extensive and detailed Report and Recommendation on claim construction (the "Special Master's Report"). Thereafter, both Paone and Microsoft filed objections to the Special Master's Report.

On February 9, 2011, the Court, adopting in part and rejecting in part the Special Master's Report, issued a decision construing these six claim terms (the "Markman Order").

1. As to the Motion for Summary Judgment

On December 21, 2011, Microsoft filed a motion for summary judgment requesting a determination of non-infringement. Microsoft alleged that neither of its accused technologies – TKIP and BitLocker – fell within the claim boundaries of the #789 Patent set by the Court's previous Markman Order. Microsoft's arguments centered on three claim limitations; two of the limitations are found in all four claims, one of the limitations is found in only two claims.

On July 30, 2012, the Court (1) granted the motion for summary judgment requesting a finding of no literal infringement as to the block and block cipher limitation in all the claims; (2) denied the motion for summary judgment requesting a finding of no infringement as to the block and block cipher limitation in all claims under the doctrine of equivalents; (3) denied the motion for summary judgment requesting a finding of no infringement as to the object key limitation in all the claims; and (4) granted the motion for summary judgment as to claims 2 and 33.

With respect to part (1) of the summary judgment decision, the Court noted that, in order for Microsoft to literally infringe the relevant claims of the #789 Patent, the blocks in TKIP's encryption would need to have a fixed length that does not vary from block-to-block. The Court found that where one MAC Protocol Data Unit ("MPDU") is not the same length as every other MPDU, TKIP would not be infringing. The Court reasoned that when all but one of the MPDUs are of uniform length, they are not fixed with respect to the length of each block, as the #789 Patent claims have been construed to mean.

However, the Court recognized two scenarios which TKIP allows: one in which the MPDU blocks are all of equal length, and one in which the MPDU blocks are not of equal length. The Court addressed whether the potential permutation of the TKIP encryption protocol, in which the data file has a length that is an exact multiple of the fragmentation constraint, resulting in MPDUs of equal length, would be infringing. This issue required the Court to determine whether *capability alone* of TKIP to result in blocks of uniform equal length would be sufficient for a finding of infringement, since the Plaintiff failed to demonstrate a single instance of this actually happening. In this regard,

the Court found that Paone failed to satisfy the minimal burden that TKIP was in reality even capable of meeting the "blocks" limitation, and that Paone thus failed to establish a genuine issue of material fact regarding literal infringement with respect to TKIP. Accordingly, the Court granted the Defendant's motion for summary judgment as to the literal infringement of the four claims.

With respect to part (2) of the summary judgment decision, the Court noted that, in order to meet the block limitation under the doctrine of equivalents, it would have to find that the accused method or system contains each limitation of the claim or its *equivalent*. The Court stated that it could not determine whether the differences between the "block" limitation and the MPDUs were insubstantial as a matter of law. The Court found that the question of whether the doctrine of equivalents is applicable to the MPDUs in the TKIP component was properly left to the jury, and thus did not impose vitiation. Therefore, the Court denied the Defendant's motion for summary judgment on this ground.

With respect to part (3) of the summary judgment decision, the Court stated that it could not resolve technical questions as matters of law, and thus concluded that the Defendant had not met its burden in demonstrating that there were no issues of material fact pertaining to whether TKIP contains an "object key."

With respect to part (4) of the summary judgment decision, the Court explained that prosecution history estoppel might limit the range of equivalents covered by a particular patent claim when that claim has been distinguished from prior art during prosecution and thus potentially narrowed in scope. The Court noted that such has been the case with the #789 Patent, whose original claim 1, upon rejection by the Patent Office

7

for failing to distinguish itself over prior art, was amended to include five additional steps, including the "repeating step." The Court found that Paone added the "repeating step" to narrow the claim's scope in order to secure his patent, and thus there was a presumption against the availability of the doctrine of equivalents.

Nevertheless, the Court noted that Paone could rebut this presumption by showing that the rationale for the narrowing amendment was not directly relevant to the alleged equivalent. However, the Court found that Paone did not meet this burden because he added the additional steps to distinguish the claimed invention from prior art, and did not make apparent that his additional arguments were made for a peripheral purpose. Thus, the Court held that Paone was barred by prosecution history estoppel from asserting infringement under the doctrine of equivalents as to the "repeating step" limitation.

2. <u>As to Motions in Limine</u>

On January 25, 2013, the Plaintiff filed motions in limine to (1) exclude evidence or testimony regarding claim constructions other than the final constructions; (2) exclude evidence or testimony concerning any alleged investigation by Microsoft in response to Paone's pre-suit letter; (3) preclude Microsoft from presenting any invalidity theories outside those explicitly disclosed in Dr. Dan Boneh's March 11, 2011 supplemental invalidity report; (4) exclude evidence or testimony concerning unasserted, dismissed, or cancelled claims; (5) exclude argument, evidence, and/or testimony regarding BitLocker; (6) exclude correspondence with Microsoft in which they sought identification of at least one product and algorithm that is being charged with infringement; (7) exclude Dr. Boneh's testimony regarding indirect infringement under "incorrect" legal standards; (8) exclude the misstatement by Dr. Boneh that the Patent Examiner's failure to mention a

8

particular claim element in the Reasons for Patentability on reexamination implies that the Examiner found that claim element to be disclosed in the prior art; (9) exclude Dr. Boneh's testimony regarding Microsoft's sales and distribution practices; (10) prevent Microsoft from communicating to the jury that it had noninfringing substitutes for TKIP; (11) exclude testimony of Dr. Boneh concerning the comparative testing of the encryption speed of Paone's "SafeCourrier" software and other encryption tools; (12) exclude Microsoft from presenting its patent portfolio for purposes other than to demonstrate its pre-suit knowledge of the #789 Patent; (13) exclude the memorandum and testimony of Bruce Schneier, the author of a prior art reference relied upon by Microsoft for invalidity purposes, regarding his perceived value of ciphers; and (14) preclude Microsoft from presenting at trial any argument, evidence, and/or testimony that Paone could have, but did not, sue other entities that sell TKIP technologies.

On January 25, 2013, the Defendant filed motions in limine to (1) preclude Paone from presenting evidence, argument, or testimony of direct infringement by Microsoft; (2) preclude Paone from presenting evidence of contributory infringement with respect to any Microsoft Windows client and server software; (3) preclude any expert from testifying outside the scope of any expert report; (4) preclude evidence, argument, or testimony regarding Microsoft's decision not to rely on an exculpatory opinion of counsel; (5) preclude evidence, argument, or testimony of any antitrust or European Union competition litigations involving Microsoft; (6) preclude as irrelevant and misleading Paone's technical expert Dr. Michael Blaze's report entitled "Two Practical and Provably Secure Block Ciphers: Bear and Lion;" (7) preclude Paone and his damages expert from presenting evidence, argument, or testimony regarding Georgia-Pacific Corp.

v. United States Plywood Corp., 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970), modified and aff'd, 446 F.2d 295 (2d Cir. 1971), factors 2, 6, and 8; (8) preclude Paone from presenting evidence, argument, or testimony suggesting that Microsoft copied Paone's invention; (9) exclude testimony of Paone's damages expert Wayne Hoeberlein; (10) strike or exclude the testimony Dr. Blaze.

On February 26, 2013, the Court granted the Plaintiff's (1) first motion in limine to exclude evidence or testimony regarding other nonfinal claim constructions, subject to any event or condition during trial, which may call for the introduction of such evidence; (2) second motion in limine to exclude evidence or testimony from Microsoft concerning any investigative steps that Microsoft allegedly took in response to the pre-suit letter from Paone; (3) third motion in limine to exclude Microsoft from presenting any invalidity theories outside those explicitly disclosed in Dr. Boneh's March 11, 2011 supplemental invalidity report; (4) fourth motion in limine to exclude evidence or testimony concerning unasserted, dismissed, or cancelled claims; (5) fifth motion in limine to exclude evidence or testimony regarding BitLocker because it was no longer a remaining issue; (6) sixth motion in limine to exclude correspondence with Microsoft in which they sought identification of at least one product and algorithm that is being charged with infringement; (7) tenth motion in limine, in part, to exclude testimony or evidence that Microsoft had noninfringing substitutes for TKIP and that it could have avoided infringement by offloading TKIP functionality in products to third parties; (8) thirteenth motion in limine to exclude Bruce Schneier's memorandum and testimony regarding his perceived value of ciphers; and (9) fourteenth motion in limine to preclude

Microsoft from presenting argument, evidence, and/or testimony concerning Paone's lack of suit against other TKIP technologies.

The Court denied the Plaintiff's (1) eighth motion to exclude the misstatement by Dr. Boneh of reasons for patentability on reexamination; and (2) eleventh motion to exclude testimony by Dr. Boneh concerning the comparative testing of the "SafeCourier" Software.

The Court reserved decision on the Plaintiff's (1) seventh motion to exclude Dr. Boneh's testimony regarding indirect infringement; (2) ninth motion to exclude Dr. Boneh's testimony regarding Microsoft's sales and distribution practices; (3) tenth motion, in part, as to evidence or testimony concerning alleged noninfringing substitutes for TKIP; and (3) twelfth motion to exclude Microsoft from presenting its own patents except as relevant to its pre-suit knowledge of the #789 Patent.

With respect to the Defendant's Motions in *Limine*, the Court granted in part the Defendant's fifth motion to preclude evidence, argument, or testimony of any antitrust or European Union competition litigations involving Microsoft. However, the Court also found that the Plaintiff should be entitled to present evidence or testimony concerning Microsoft's prior domestic litigation in the context of its expert's report on damages. With regard to the United States litigation, the Court found that the Plaintiff should be entitled to present agreements in the Microsoft Communications Protocol Program ("MCPP") itself, but that there is no need to explain that the MCPP was developed as a result of Microsoft's antitrust litigation.

The Court denied the Defendant's (1) first motion to preclude Paone from presenting evidence, argument, or testimony of direct infringement by Microsoft; (2)

second motion to preclude Paone from presenting evidence of contributory infringement with respect to any Microsoft Windows client and server software; (3) fourth motion to preclude evidence, argument, or testimony regarding Microsoft's decision not to rely on an exculpatory opinion of counsel; (4) sixth motion to preclude as irrelevant and misleading Dr. Blaze's report (5) seventh motion to preclude Paone and Hoeberlein, from presenting evidence, argument, or testimony about the Georgia-Pacific factors 2, 6, and 8; (6) eighth motion to preclude Paone from presenting evidence, argument, or testimony suggesting that Microsoft copied Paone's invention; (7) ninth motion to strike/exclude the testimony by Hoeberlein; and (8) tenth motion to strike/exclude the testimony of Dr. Blaze.

The Court reserved decision on the Defendant's third motion to preclude any expert from testifying outside the scope of any expert report on the basis that the precise scope of Dr. Blaze's expert testimony was something that could not be determined at the time of the decision.

On March 12, 2013, the Defendant Microsoft filed the instant motion for reconsideration of Plaintiff's Motions in *Limine* Nos. 4 and 5 and Defendant's Motion in *Limine* No. 4.

## II. DISCUSSION

### A. <u>Legal Standard on a Motion for Reconsideration</u>

A motion for reconsideration is governed by Local Rule 6.3 and Federal Rule of Civil Procedure 59(e) ("Fed. R. Civ. P."). Reconsideration is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Dellefave v. Access Temps., Inc., No. 99 Civ. 6090, 2001 U.S. Dist.

LEXIS 3165, at *1 (S.D.N.Y. Mar. 22, 2001). Thus, "a motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision." In re Worldcom, Inc. Securities Litigation, 308 F. Supp. 2d 214, 224 (S.D.N.Y. 2004); Colodney v. Continuum Health Partners, Inc., No. 03-7276, 2004 WL 1857568, at *1 (S.D.N.Y. Aug 18, 2004).

**B. Microsoft's Motion for Reconsideration**

1. As to Plaintiff's Motions in *Limine* Nos. 4 and 5

The Defendant contends that evidence or testimony concerning cancelled, unasserted, or dismissed claims (Motion in *Limine* No. 4) is relevant with respect to Microsoft's defense of Paone's willfulness allegations. The Defendant further contends that the exclusion of evidence or testimony regarding BitLocker (Motion in *Limine* No. 5) prevents it from introducing evidence at the trial of the Plaintiff's numerous infringement theories that have been unsuccessful. The Defendant believes that the Plaintiff will attempt to persuade the Court that Microsoft knew or should have known of the likelihood that Microsoft's TKIP infringed claims 24 and 34 of the #789 Patent. In this regard, the Defendant assumes the Plaintiff will introduce letters to Microsoft suggesting licensing of the #789 Patent. Consequently, Microsoft believes it should be able to introduce evidence that the Plaintiff's infringement allegations did not initially focus on TKIP; have changed over time; and that the Court rejected certain relevant allegations during summary judgment, leaving the Plaintiff with only two doctrine of equivalents claims.

In opposition, Paone contends that Microsoft, in an attempt to seek reconsideration of the Court's decisions, has presented new arguments, supported by new authority, not presented in its original motion. Paone asserts that this action is improper on a motion for reconsideration, and provides ample precedent to that effect. See Gayle v. Harry's Nurses Registry, Inc., No. 07-CV-4672, 2010 WL 5477727, at *3 (E.D.N.Y. Dec 20, 2010) ("Further, reconsideration is not appropriate because all of the arguments and evidence that Defendants now wish to submit was available to them at the time of the Liability Decision."). Furthermore, Microsoft contends that, on the merits, Paone makes allegations irrelevant to the issue of willfulness, including the objective and subjective willfulness prongs.

In the Court's view, if Paone seeks to present evidence of Microsoft's inability to mount a substantial defense, Microsoft would want to point to the rulings that have limited Paone to the two doctrine of equivalents claims. However, the Court has held that prior assertions of infringement against BitLocker, and any evidence of unasserted, dismissed, or cancelled claims is not relevant to the remaining claims. The Court's grant of summary judgment with respect to claims 2 and 33 does not bear on the reasonableness of Microsoft's defenses with respect to the different and unrelated TKIP technology that remains in this suit. Accordingly, the Court adheres to its prior determination that the aforementioned evidence be excluded under Federal Rule of Evidence 402.

2. As to Defendant's Motion in *Limine* No. 4

With respect to the denial of Defendant's Motion in *Limine* No. 4, the Defendant contends that admitting evidence, argument, or testimony regarding its decision not to

rely on an exculpatory opinion of counsel, rather than assert an advice-of-counsel defense to willful infringement, would invite a jury to draw an improper adverse inference from this decision. The Defendant relies on *en banc* decisions of the Federal Circuit to show that asserting privilege to maintain client confidentiality may not lead to an adverse inference with respect to the nature of that advice. Knorr-Bremse v. Dana Corp., 383 F.3d 1337, 1344-45 (Fed. Cir. 2004) ("However, the assertion of attorney-client and/or work-product privilege and the withholding of the advice of counsel shall no longer entail an adverse inference as to the nature of that advice."); Aspex Eyewear Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305 (Fed. Cir. 2010) ("The district court stated that this court's ruling in In re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007), made clear that there is no automatic obligation to obtain or present an exculpatory opinion of counsel in order to avoid 'willful' infringement."). The Defendant further points out that when an opinion of counsel is not used as a defense to willful infringement, it does not follow that there is a presumption that the party knew it was infringing a valid patent. This is precisely what Microsoft asserts the denial of Motion in *Limine* No. 4 allows Paone to do. Microsoft thus contends that Paone should be precluded from suggesting that Microsoft failed to obtain an opinion of counsel, or is failing to disclose it because it is unfavorable.

In opposition, the Plaintiff contends that Microsoft made the same arguments, and has relied on the same authorities, as it did when the Court previously rejected Microsoft's Motion in *Limine* No. 4. Paone contends that the Defendant simply seeks a second chance to present the same three arguments that the: (1) Court's previous ruling allows Paone to invite a jury to draw an impermissible inference; (2) In re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007), which held that there is no affirmative

15

obligation to obtain an opinion of counsel, forecloses the Court's previous ruling; and (3) Spectralytics, Inc. v. Norman Noble, Inc., 649 F.3d 1336 (Fed. Cir. 2009), which held that a failure to obtain an opinion of counsel was not probative of willfulness, but could be considered by the Court after willful infringement is established, is at odds with the Court's prior ruling.

In denying Microsoft's Motion in *Limine* No. 4, the Court acknowledged In re Seagate, which stands for the proposition that there must be "objective recklessness" on the part of an alleged infringer before failure to obtain an exculpatory opinion of counsel can establish willful infringement. In that case, the Court set forth a new process for determining whether an infringer's conduct was objectively willful. First, the patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. Second, the patentee must also demonstrate that this objectively-defined risk was either known or so obvious that it should have been known to the accused infringer. Thus, the failure to obtain an opinion of counsel is only relevant to the second prong of the willful infringement analysis.

Here, the Court previously held that the failure to produce an exculpatory opinion of counsel may be considered, in the totality of the circumstances, as relevant to the issue of willful infringement. In so holding, the Court relied on Aspex Eyewear Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305 (Fed. Cir. 2010), a patent infringement case where the court held that the patentee Aspex was equitably estopped from bringing an infringement claim after it was silent for a period of three years and five months after Clariti denied

infringement. The Aspex Court further reasoned that timely consultation with counsel may be evidence that an infringer did not engage in objectively reckless behavior.

In its motion for reconsideration, Microsoft merely repeats the arguments that the Court previously rejected. For this reason, the Court declines to disturb its earlier determination and the Defendant's motion for reconsideration on its Motion in *Limine* No. 4 is denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendant Microsoft's motion for reconsideration of its Motion in *Limine* No. 4 and the Plaintiff Paone's Motions in *Limine* Nos. 4 and 5 is denied.

SO ORDERED.
Dated: Central Islip, New York
August 9, 2013

                 *Arthur D. Spatt*
                 Arthur D. Spatt
                 United States District Judge